# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ANTHONY FERRAIOLI, ALDRIN LAMBOY and DAWN FRAY, | : : : | Civil Action No. 09-2663 (SRC) |
| Plaintiffs, | : : | **OPINION** |
| v. | : : | |
| CITY OF HACKENSACK POLICE DEPARTMENT, et al., | : : : | |
| Defendants. | : | |

**CHESLER**, District Judge

      This matter comes before the Court on the motion by Defendants City of Hackensack Police Department, Chief of Police Charles K. Zisa ("Chief Zisa") and Captain John Carroll ("Captain Carroll") to dismiss various claims in the First Amended Complaint ("Amended Complaint") [docket entry 9] pursuant to Federal Rule of Civil Procedure 12(b)(6) [docket entry 23].  Defendant Sergeant Anthony Trezza ("Sergeant Trezza") joins in the motion to dismiss [docket entry 28].  (This Opinion will use the term "Defendants" to refer to the Hackensack Police Department, Chief Zisa, Captain Carroll and Sergeant Trezza collectively.)  Plaintiffs Anthony Ferraioli ("Ferraioli") and Aldrin Lamboy ("Lamboy") (collectively, "Plaintiffs") have opposed the motion.  The Court has considered the papers filed by the parties.  It rules on this motion without oral argument, pursuant to Federal Rule of Civil Procedure 78.   For the following reasons, Defendants' motion to dismiss will be granted in part and denied in part.

# I.    BACKGROUND

Plaintiffs Ferraioli and Lamboy filed this workplace retaliation and civil rights action in this Court on June 2, 2009.  On June 30, 2009, these Plaintiffs, joined by Plaintiff Dawn Fray, filed an Amended Complaint adding factual allegations and causes of action.  The Amended Complaint before the Court asserts claims arising under federal law as well as state law causes of action.  The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction over state law claims).[1]  Based on the allegations of the Amended Complaint, and assuming their truth for purposes of this motion only, the Court summarizes the factual background as follows:

Ferraioli and Lamboy are, and were at all times relevant to this action, police officers employed by Hackensack, New Jersey.  At all relevant times, individual Defendants Chief Zisa, Captain Carroll and Sergeant Trezza each held posts in the Hackensack Police Department as indicated by their titles.

In June 2008, an election for the position of delegate to the New Jersey Policeman's Benevolent Association ("PBA"), a labor union representing police officers, was held in the locker room of the Hackensack Police Department headquarters.  The two candidates running for

---

[1] Plaintiffs assert in the Amended Complaint that the Court also has jurisdiction based on the "amount in dispute," implying that federal diversity jurisdiction pursuant to 28 U.S.C. § 1332 exists over this action.  Nothing, however, in the Amended Complaint suggests that there is complete diversity of citizenship between Plaintiffs and Defendants, as required under 28 U.S.C. § 1332(a).  Strawbridge v. Curtiss, 3 Cranch 267, 2 L.Ed. 435 (1806) (holding that, for jurisdiction to attach under section 1332(a)(1), there must be complete diversity between all plaintiffs and defendants). It appears that all Plaintiffs are New Jersey domiciliaries, but no information as to Defendants' domicile is provided.  The Court, therefore, disregards diversity jurisdiction as a basis for subject matter jurisdiction, as it is not supported by the Amended Complaint.

PBA delegate were Officer Joseph Inglima and Detective Tina Clouse.  According to the Amended Complaint, Department Chief Zisa made it known to all officers in the Hackensack Police Department that he wanted Clouse to win the election and, moreover, expected the officers to vote for Clouse to demonstrate their loyalty to him.  Plaintiffs allege that at Chief Zisa's instruction, and/or at least condoned by him, Sergeant Jamie Barrios stood in front of the ballot box to demand that all officers show him their written votes.  They aver that Sergeant Barrios recorded how the officers voted, including taking the names of those officers who would not show their ballot.  Lamboy was told prior to the election that a failure to show his vote would be considered a "no vote" for Clouse and disloyalty to Chief Zisa.  Both Ferraioli and Lamboy assert that they were threatened by Sergeant Trezza and Captain Carroll, among others, with adverse employment action if they did not vote for Clouse.  Ferraioli and Lamboy nevertheless made it openly known to their superiors and to Chief Zisa that they supported Inglima in the PBA delegate election and would not vote for Clouse.  Inglima ultimately won the election, and Ferraioli and Lamboy claim that they were retaliated against for their "political affiliation."  (Am. Compl., ¶¶ 45, 57.)

Ferraioli alleges that shortly after the election, in August 2008, Chief Zisa demoted and reassigned him to a walking post, even though he was aware that Ferraioli had sustained a serious foot injury in February 2008 while on duty.  It appears from the Amended Complaint that Ferraioli could not perform this walking post job without having foot surgery, that he was not able to have the surgery due to a denial of coverage by the Hackensack Police Department's insurance carrier and that therefore he could not work and earn overtime in his newly assigned walking post.  His requests for assignment to light duty were ignored or denied.  Ferraioli

3

complained that Defendants were failing to accommodate him for his medical disability.  He also complained that the actions of Defendants in assigning him to a post that entailed functions he could not physically perform constituted political affiliation discrimination and retaliation for exercising his constitutional right to vote.  Ferraioli filed a formal complaint, in the form of a March 31, 2009 letter addressed to Chief Zisa, concerning demotions and transfers directed at him and other officers who voted for Inglima and/or refused to support Clouse in the PBA delegate election.[2]  Ferraioli's formal complaint also stated that the Hackensack Police Department had discriminated against him based on his physical disability by failing to accommodate his requests for light duty and reported that Sergeant Trezza had said, either directly to Ferraioli or to some other officer about Ferraioli, that he would "put a bullet in [Ferraioli's] head" if Ferraioli won the May 2009 election for PBA president.  (See Minkove Cert., Ex. E.)

Lamboy alleges that shortly after the election, on July 7, 2008, Chief Zisa demoted and reassigned him from the motorcycle division to a walking post.  As a result, Lamboy claims he has been unable to earn overtime pay.  Lamboy also alleges that Captain Carroll pressured him to engage in a cover-up of Defendants' wrongful actions, but Lamboy refused.  He complained of retaliation and formalized this complaint in an April 9, 2009 letter to Captain Carroll, which expressed his view that he had been punished for voting for Inglima in the PBA election and

---

[2] Portions of the March 31, 2009 letter are quoted in the Amended Complaint.  The entire letter has been submitted to the Court with the certification of Plaintiffs' counsel, filed with Plaintiffs' opposition to the motion to dismiss.  Because the letter is specifically referenced in the Amended Complaint, the Court properly considers its contents on this motion to dismiss.  See Section II.A., infra.

declared that he will not lie if he is ever deposed about the election issue.[3]  The Amended

Complaint also alleges that Lamboy "shared tape recordings reflecting the illegal retaliation and

pressure."  (Am. Compl., ¶ 60.)

Ferraioli and Lamboy further allege that the retaliation continued following their formal

complaints to the police department.  Each one became the subject of separate internal affairs

actions.  The Lamboy internal affairs complaint surfaced on or about May 12, 2009, regarding an

April 2, 2009 incident characterized by the Amended Complaint as a "minor verbal dispute

between Lamboy and a hostile man at the hospital" during a hospital transport.  (Am. Compl., ¶¶

91-92.)  Lamboy was suspended for two days in connection with this incident.  The suspension

was announced to him on May 29, 2009, the day he was running for PBA vice president and a

little over two weeks after Lamboy filed his tort claims act notice in connection with this lawsuit.

Ferraioli learned of the internal affairs matter concerning him on or about June 10, 2009.  On that

date, an officer identified in the Amended Complaint as Captain Garcia called Ferraioli and

instructed him to report to the internal affairs unit the next morning.  The meeting the following

day took place without the presence of legal counsel.  Captain Garcia advised Ferraioli of the

nature of the investigation.  It concerned suspicions that Ferraioli was posting messages or blogs

---

[3] This letter, supplied to the Court with counsel's certification, is also specifically
referenced in the Amended Complaint and may likewise be considered by the Court.

on the website NJ.com under the screen name "IA Salcedo."[4]  Ferraioli denied responsibility.

According to the Amended Complaint, "Garcia then informed Ferraioli that he would be seizing

Ferraioli's personal computer as part of the investigation and pursuant to Attorney General

guidelines."  (Am. Compl., ¶ 71.)  Ferraioli "refused to consent," but Garcia advised that his

failure to cooperate and turn over the computer would result in administrative charges that could

lead to his termination.  Thereafter, Garcia, Ferraioli and another officer, Sergeant Rich Levis

drove in the same police vehicle to Ferraioli's New Milford, New Jersey home to retrieve the

computer, which is the personal property of Plaintiff Fray, who resides in Ferraioli's home.

Ferraioli asserts that the computer was seized without a warrant and without his consent, while

he sat "in custody" in the back of the squad car.  (Id., ¶ 75.) The Amended Complaint alleges that

the computer was seized under the pretext that it was to be used in the internal affairs

investigation but, like the investigation itself, was actually further retaliation for filing the instant

lawsuit.

     Based on these facts, the Amended Complaint pleads for relief under a variety of federal

and state law theories, against all Defendants unless specifically noted otherwise.  The claims are

asserted in 19 separate counts.  Listed in order, they are:

---

[4] Though not asserted in the Amended Complaint, the Court notes that "IA Salcedo" was presumed to refer to an Officer Salcedo, assigned to the internal affairs unit of the Hackensack Police Department.  Apparently, information gathered through subpoenas issued in connection with the investigation indicated that the blog postings were associated with Ferraioli's e-mail account and had originated on a computer with an IP address registered to Ferraioli's girlfriend, Dawn Fray. The details set forth in this footnote are not in the Amended Complaint.  The Court learned of this suspected association from the papers filed in connection with Ferraioli's motion for a preliminary injunction and from the related hearing, held on June 15, 2009.  These facts are noted solely for the purpose of clarity in the factual summary.  They are not assumed by the Court to be true and they have no bearing on the Court's analysis of the instant motion to dismiss.

| | |
|---|---|
| Count I | 42 U.S.C. § 1983 Claim Based on First Amendment |
| Count II | 42 U.S.C. § 1985 Claim |
| Count III | 42 U.S.C. § 1988 Claim |
| Count IV | Claim under Conscientious Employee Protection Act, N.J.S.A. 34:19-1 et seq. |
| Count V | Claim under Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58 (1990) |
| Count VI | Intentional Infliction of Emotional Distress |
| Count VII | Breach of Express Contract |
| Count VIII | Breach of Implied Contract |
| Count IX | Breach of Implied Covenant of Good Faith and Fair Dealing |
| Count X | Assault (by Ferraioli as to Defendant Sergeant Trezza) |
| Count XI | Terroristic Threats (by Ferraioli) |
| Count XII | Negligent Infliction of Emotional Distress (by Ferraioli as to Defendant Sergeant Trezza) |
| Count XIII | Claim under New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq., based on disability discrimination (by Ferraioli) |
| Count XIV | Claim under New Jersey Law Against Discrimination based on retaliation for requesting disability accommodation (by Ferraioli) |
| Count XV | Claim for Hostile Work Environment based on Political Affiliation Discrimination |
| Count XVI | Claim under New Jersey Civil Rights Act, N.J.S.A. 10:6-1 et seq. |
| Count XVII | Invasion of Privacy (by Ferraioli and Fray) |

| Count XVIII | 42 U.S.C. § 1983 Claim Based on Fourth Amendment (by Ferraioli and Fray) |
|---|---|
| Count XIX | Conversion (by Ferraioli and Fray) |

Defendants have moved to dismiss Counts I, II, III, IV, V, VII, VIII, IX, XV, XVI and XVIII of the Amended Complaint.  After setting forth the standard by which the motion must be evaluated, the Court will analyze the sufficiency of the federal claims at issue in this motion and then turn to the state law claims.

## II.  DISCUSSION

### A.     Legal Standard

The Court must review this motion pursuant to Federal Rule of Civil Procedure 12(b)(6), which provides for dismissal of a claim for failure to state a claim upon which relief may be granted.  Federal Rule of Civil Procedure 8(a) requires that to state a claim for relief, a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).  When evaluating the sufficiency of claims subject to the pleading requirements of Rule 8(a), the Court must apply the plausibility standard articulated by the Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009).  In Twombly and Iqbal, the Supreme Court stressed that a complaint will survive a motion under Rule 12(b)(6) only if it states "sufficient factual allegations, accepted as true, to 'state a claim for relief that is plausible on its face.'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." Id. (citing Twombly, 550 U.S. at 556.)  The cases are also clear about what will not suffice: "threadbare recitals of the elements of a cause of action," an "unadorned, the-defendant-unlawfully-harmed-me accusation" and conclusory statements "devoid of factual enhancement." Id. at 1949-50; Twombly, 550 U.S. at 555-57.  While the complaint need not demonstrate that a defendant is *probably* liable for the wrongdoing, allegations that give rise to the mere *possibility* of unlawful conduct will not do.  Iqbal, 129 S.Ct. at 1949; Twombly, 550 U.S. at 557.  The issue before the Court "is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence in support of the claims." Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1420 (3d Cir. 1997) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (relying on Twombly to hold that to survive a motion to dismiss a Complaint must assert "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element").

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the allegations of the complaint, documents attached or specifically referenced in the complaint if the claims are based upon those documents and matters of public record.  Winer Family Trust v. Queen, 503 F.3d 319, 327 (3d Cir. 2007); Sentinel Trust Co. v. Universal Bonding Ins. Co., 316 F.3d 213, 216 (3d Cir. 2003).

**B.    Federal Claims**

1.    Claims Predicated on Alleged First Amendment Violations (Count I)

Plaintiffs allege in Count I of the Amended Complaint that Defendants' retaliatory conduct has violated Plaintiffs' First Amendment right to free speech and First Amendment right to vote.

9

The First Amendment states as follows:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. CONST. amend. I.  The rights guaranteed by the First Amendment apply against the state through their incorporation into the due process clause of the Fourteenth Amendment.  Gitlow v. People of the State of N.Y., 268 U.S. 652, 666 (1925) (concerning First Amendment freedom of speech); Elfbrandt v. Russell, 384 U.S. 11, 18 (1966) (citing Supreme Court cases recognizing incorporation of First Amendment freedom of association).   Plaintiffs seek relief pursuant to the cause of action established by 42 U.S.C. § 1983, which provides for civil redress of a constitutional violation committed by a person acting under color of state law.  That statute provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom or usage of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

28 U.S.C. § 1983.  To establish a claim under section 1983, a plaintiff must demonstrate that the challenged conduct was committed by (1) a person acting under color of state law and (2) that the conduct deprived him of rights, privileges, or immunities secured by the Constitution or the laws of the United States.  See Parratt v. Taylor, 451 U.S. 527, 535 (1981).

Defendants do not take issue with the first element of the section 1983 claim asserted in Count I but rather move to dismiss the claim for failure to state that Plaintiffs were deprived of

any right protected by the First Amendment.  Actionable retaliation for the exercise of First Amendment rights requires Plaintiffs to establish (1) that the conduct in which Plaintiffs engaged was constitutionally protected, and (2) that it was a substantial or motivating factor for the alleged retaliatory conduct by Defendants.  Baldassare v. State of N.J., 250 F.3d 188, 194-95 (3d Cir. 2001).  The First Amendment claim brought by Plaintiffs is premised on retaliation for two distinct types of conduct protected by the First Amendment - freedom of speech and freedom of association, which encompasses the right to vote.  Kusper v. Pontikes, 414 U.S. 51, 56-57 (1973) (holding that though administration of electoral process is largely entrusted to states, such administration must not infringe the First Amendment freedom to associate with a group for the common advancement of political beliefs).  For the following reasons, the Court holds that Plaintiffs' First Amendment claims based on retaliation for exercising both free speech and free association rights surmounts Defendants' Rule 12(b)(6) challenge.  Plaintiffs will be permitted to proceed on these claims.

The Court first addresses the sufficiency of the free speech claim.  The Supreme Court has been clear that public employees, such as Plaintiffs, may neither be completely without safeguards under the First Amendment for their expression nor under blanket protection for all remarks made simply because they concern the public official or entity employer.  Connick v. Myers, 461 U.S. 138, 143-148 (1983).  Rather, the Supreme Court has articulated a standard which strikes "a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."  Id. at 142 (quoting Pickering v. Bd. of Educ.

of Twp. High School Dist. 205, Will County, Illinois, 391 U.S. 563, 568 (1968).   The First

Amendment protects speech by a government employee only when it relates to a matter of public

concern.  Id. at 146.  Whether speech is protected under the First Amendment presents a question

of law to be determined by the Court.  Baldassare, 250 F.3d at 195.

    According to the Amended Complaint, the speech at issue in the retaliation claim is as

follows:  Ferraioli and Lamboy allege that they "made it openly known to their superiors,"

including Defendant Chief Zisa, that they did not support Clouse, one of the candidates in the

labor union election, and instead supported Inglima, Clouse's opponent.  (Am. Compl. ¶ 31.)

Ferraioli complained that he and several other officers, including Lamboy, suffered adverse

employment action for their support of Inglima in the PBA delegate election.  Lamboy

complained that he was punished for supporting Clouse and for failing to cooperate in a cover-up.

    The Court finds that these statements meet the public concern requirement sufficient to

bring the speech within the purview of First Amendment protection and thus state a claim for

retaliation.  "A public employee's statement involves a matter of public concern if it can be fairly

considered as relating to any matter of political, social or other concern to the community."

Muzslay v. City of Ocean City, 238 F.App'x 785, 789 (3d Cir. 2007) (citing Brennan v. Norton,

350 F.3d 399, 412 (3d Cir.2003)).  The "content, form and context" of the statement bear on the

question of public concern.  Connick, 461 U.S. at 147-48.   In the employment context, the

important distinction to be made regarding constitutional protection is between speech related to

personal interests and speech related to matters of importance to the community.  McGreevy v.

Stroup, 413 F.3d 359, 365 (3d Cir. 1995).  In this case, the statements all center on Plaintiffs'

12

backing of a candidate for a position in their labor union.  The leadership of a collective

bargaining unit representing public employees is not so removed from the community's interests

and concerns that the Court can conclude that they are beyond the reach of the First Amendment

as relating merely to Plaintiffs' personal interests.  This holds true not only for the alleged

statements made expressly in support of one candidate, but also for Ferraioli's and Lamboy's

subsequent complaints to superior officers that they had been essentially demoted or "punished"

for siding with Inglima over Clouse.   Although Defendants argue that such an complaints amount

to no more than an employee grievance, relating only to Plaintiffs' personal interests and, in

particular, their concern over perceived adverse employment actions, the Court rejects such a

superficial characterization of the complaints.  The Court acknowledges that the Supreme Court

has cautioned against "constitutionalizing" an public employee's grievance simply because he or

she made statements in the course of public employment.  <u>Connick</u>, 461 U.S. at 154.  The

complaints, however, stem directly from the protected expression made by Ferraioli and Lamboy

concerning a PBA election.  While on their face they may focus on each Plaintiff officer's job

assignments and thus appear to have no bearing on community interests, the complaints represent

a continued effort by Plaintiffs to resist what they perceived to be as Defendants' efforts to

discourage their exercise of free speech.

Plaintiffs have also adequately pled facts in support of the second element of a free speech

retaliation claim.  The Amended Complaint specifically avers that both Ferraioli and Lamboy

were re-assigned to less favorable posts as a result of their expressed support for Inglima.  It also

avers that they continued to face retaliation by Defendants following their complaints of the

13

retaliatory demotions in the form of the internal affairs matters pursued against them.  Thus, the Amended Complaint states cognizable First Amendment claims for retaliation for engaging in constitutionally protected speech.

Plaintiffs also premise their First Amendment claim on the theory that they suffered retaliation for exercising their right to vote, which is protected under the First Amendment's guarantee of free association.  Public employees are, like all citizens, entitled to associate freely without retaliation by the government for doing so.  Smith v. Ark. State Highway Employees, Local 1315, 441 U.S. 463, 465 (1971) (per curiam); see also Bradshaw v. Twp. of Middletown, 296 F.Supp.2d 526, 544 (D.N.J. 2003), aff'd, 145 F.App'x 763 (2005) (holding same).

With regard to reprisals for their exercise of the right to free association, Plaintiffs allege in the Amended Complaint that they have been discriminated against for their political affiliation based on supporting and voting for Inglima in the PBA delegate election.  The Court has, in evaluating the sufficiency of this aspect of the First Amendment retaliation claim, therefore reviewed two lines of cases discussing freedom of association under the First Amendment.  One line deals generally with one's right to associate with groups engaged in expressive activity.  The Supreme Court has recognized that "[i]mplicit in the right to engage in activities protected by the First Amendment [is] a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends."  Roberts v. United States Jaycees, 468 U.S. 609, 622 (1984); see also Boy Scouts of Am. v. Dale, 530 U.S. 640, 648 (2000) (holding group must be an expressive association to fall within ambit of First Amendment protection).  The other line deals more particularly with discrimination against a public employee

for his or her political affiliation.  Under the Supreme Court's political patronage trilogy, the First Amendment's freedom of association guarantee bars basing employment decisions, such as discharge, hiring and promotions, on an employee's political affiliation, so long as such affiliation is not an appropriate requirement for the position at issue (e.g., policymaking position).  See Goodman v. Pa. Turnpike, 293 F.3d 655, 663 (3d Cir. 2002) (discussing trilogy of political patronage cases:  Elrod v. Burns, 427 U.S. 347 (1976), Branti v. Finkel, 445 U.S. 507 (1980), and Rutan v. Republican Party of Ill., 497 U.S. 62, 75 (1990)).

The Court begins its analysis of the sufficiency of Plaintiffs' freedom of association claims with the latter line of authority, simply because Plaintiffs have expressly charged in the Amended Complaint that they have suffered political affiliation discrimination.  The political patronage theory of free association infringement is, however, wholly inapplicable to this case.  The Third Circuit has held that "[t]o make out a claim of discrimination based on political association, a public employee must prove (1) that the employee works for a public agency in a position that does not require a political affiliation, (2) that the employee maintained an affiliation with a political party, and (3) that the employee's political affiliation was a substantial or motivating factor in the adverse employment decision."  Id. at 663-664.  The Amended Complaint is utterly lacking in any allegation that Plaintiffs maintained a political affiliation and that, moreover, they were subjected to retaliation for such affiliation.  The Court recognizes that "the First Amendment, among other things, protects the right of citizens 'to band together in promoting among the electorate candidates who espouse their political views.'"  Clingman v. Beaver, 544 U.S. 581, 586 (2005) (quoting Cal. Democratic Party v. Jones, 530 U.S. 567, 574 (2000)).

15

Indeed, freedom of association rights may not be limited to affiliation with a political *party*, as opposed to a political cause or candidate.  See, e.g., Aiellos v. Zisa, No. 09-3076, 2009 WL 3424190, at * (D.N.J. Oct. 20, 2009) (discussing right as more broadly applying to association for furtherance of political beliefs or ideas than mere party affiliation).  According to the Amended Complaint, however, Plaintiffs aligned with one fellow officer over another in the candidates' bid for a leadership position within a collective bargaining unit.  There is no allegation that suggests that supporting one candidate over another for the delegate position implicates the furtherance of political views, and the Court has no basis to conclude that simply because the two candidates had to compete in an "election" transforms the matter into one regarding political beliefs.

The Amended Complaint does, on the other hand, sufficiently state that Defendants' retaliatory actions for Plaintiffs' support of Inglima over Clouse in the PBA election infringed their First Amendment right in that it burdened their association with a labor union.  It is well - established that the First Amendment right to free association extends to union-related activity. "Plainly efforts of public employees to associate together for the purpose of collective bargaining involve associational interests which the first amendment protects from hostile state action." Labov v. Lalley, 809 F.2d 220, 222-23 (3d Cir.1987);  Robb v. City of Phila., 733 F.2d 286, 295 (3d Cir. 1984); Bradshaw, 296 F.Supp.2d at 544.  To state a section 1983 claim premised on this right, "plaintiffs must allege instances of union activity for which they were retaliated against by persons acting under color of state law."  Bradshaw, 296 F.Supp.2d at 544.  The Amended Complaint plausibly pleads that by being subjected to pressure to cast their vote for a particular candidate and later retaliation for failing to bend to that pressure, Plaintiffs faced a significant

impediment to participation in union-related activity.  Assuming the truth of Plaintiffs'
allegations, the Amended Complaint portrays a scenario in which the public employer effectively
attempted to control the labor union leadership.  It undoubtedly states a colorable claim that
Defendants' actions unconstitutionally burdened Plaintiffs' First Amendment right to associate
with a labor union and engage in union activities.

The Court notes that it is an unresolved question in the Third Circuit whether a public
employee's constitutional protection of free association is tempered by the "public concern"
requirement imposed on free speech.  Justice v. Danberg, 571 F.Supp.2d 602, 610 (D.Del. 2008);
see also Bell v. City of Phila., 275 F.App'x 157, 160 (3d Cir. 2008) (noting circuit split on matter
and citing Sanguini v. Pittsburgh Bd. of Pub. Educ., 968 F.2d 393, 399 (3d Cir.1992) as declining
to reach the issue); cf. San Filippo v. Bongiovanni, 30 F.3d 424, 442 (holding that public
employee asserting retaliation claim against employer based on First Amendment right to petition
need not demonstrate that the petition involves a matter of public concern).  However, as the
Court held above, the leadership of a labor union, and particularly one representing public
employees is a matter of the community's concern.  Thus, even if the public concern requirement
were to apply in the context of a public employee's freedom of association claim, the allegations
of the Amended Complaint satisfy that requirement.

The Court, therefore, will permit Plaintiffs' section 1983 claims for First Amendment
retaliation to proceed on both grounds of freedom of speech and freedom of association
infringement.  Defendants' motion to dismiss will be denied as to the claims asserted by Plaintiffs
in Count I of the Amended Complaint.

      2.     <u>Claim for Conspiracy To Violate Civil Rights Pursuant to 42 U.S.C. § 1985 (Count II)</u>

In their opposition to the motion, Plaintiffs express their desire to voluntarily dismiss Count II, which pleads for relief under 42 U.S.C. § 1985. (Pl. Br. at 18.) Accordingly, the Court will dismiss this claim. Plaintiffs note in their brief that they wish, instead, to proceed on "a claim for civil conspiracy," which the Court understands to mean a common law conspiracy claim, and they request leave to amend the Complaint to plead this claim. (<u>Id.</u>) The Court declines to entertain that request at time, as it has not been brought by formal motion supported by adequate briefing and legal authority.

      3.     <u>Claim for Violation of Fourth Amendment Pursuant to 42 U.S.C. § 1983 (Count XVIII)</u>

In Count XVIII, Plaintiffs Ferraioli and Fray (but not Lamboy) assert a claim labeled as one for violation of the Fourth Amendment. Yet, in the allegations pled to support the claim, Plaintiffs repeat infringements which sound in the rights guaranteed by the First Amendment. Specifically, they allege as follows:

> Defendants conspired to violate Fray and Ferraioli's constitutional rights as set forth in the United States Constitution by denying them the rights and protections conveyed by the Constitution to include but not be limited to freedom of speech and freedom to vote, in violation of 42 U.S.C. § 1983.

(Compl., ¶ 206.) The Fourth Amendment, in contrast, guarantees an individual's right to be free from "unreasonable searches and seizures." U.S. CONST. amend. IV.

Factual allegations made earlier in the Amended Complaint do not illuminate but rather further muddle the question of what the nature of the claim asserted in Count XVIII is, meaning

whether it regards an alleged First Amendment violation or Fourth Amendment violation.  At paragraph 86, following factual allegations regarding the search and seizure itself and the associated internal affairs investigation, Plaintiffs allege that "[t]his investigation and the seizure of the computer represent further retaliation against Ferraioli for the filing of his lawsuit."  (Am. Compl., ¶ 86.)  Yet, Plaintiffs also allege facts suggesting that it is really a claim for an unlawful search and seizure.  The Amended Complaint avers that the search and seizure were effected without a warrant, that the officer in charge of the internal affairs investigation did not indicate that there were exigent circumstances surrounding the investigation, and that Ferraioli refused to consent to the search.  (Id., ¶¶ 72, 76, 79-80.)  The Court notes that neither side - either the movants or the proponents of the Amended Complaint - appear to regard the claim in Count XVIII as one relating to a Fourth Amendment violation.  In briefing the dismissal of this claim, Defendants treat it as seeking redress for alleged retaliation for protected First Amendment activity.  Plaintiffs do not address a Fourth Amendment claim in their brief in opposition to the motion and instead argue for the maintenance of their section 1983 claims only as they pertain to their First Amendment rights.

Insofar as Count XVIII seeks relief for alleged infringement of Ferraioli's rights to freedom of speech and freedom of association, it repeats the claim already asserted in Count I . Indeed, Ferraioli has alleged, in support of Count I, that the internal affairs investigation was substantially motivated by his complaints about the election.  Thus, as asserted by Ferraioli, Count XVIII will be dismissed as duplicative.  As to Fray, the Amended Complaint does not set forth a single fact concerning conduct falling within the purview of the First Amendment.  As such, the

First Amendment retaliation claim asserted in Count XVIII - assuming that is the nature of the plea for relief - must be dismissed.

To the extent, however, that Plaintiffs are attempting to plead for relief under section 1983 for a Fourth Amendment violation by Defendants, the claim must be dismissed for failure to meet even basic pleading standards under Rule 8, as articulated in Twombly and Iqbal.  In light of the lack of briefing, the Court reaches no conclusion as to whether the Amended Complaint states that an unreasonable search and seizure occurred.  Even assuming that the Amended Complaint avers sufficient facts to state a cognizable violation of Ferraioli's and/or Fray's Fourth Amendment rights, it falls short of stating a claim against the Defendants named in the Complaint. The Supreme Court, stressing that liability for a civil rights violation cannot be based solely on respondeat superior, has held that a defendant in a civil rights action must be personally involved in the alleged wrongs. Parratt, 451 U.S. at 537 n. 3.  On this matter, the Third Circuit has instructed that "[p]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." Rode v. Dellarciprete , 845 F.2d 1195, 1207 (3d Cir. 1988).  Plaintiffs have not alleged that any of the Defendants carried out the search and seizure or, alternatively, that it was performed at any of the Defendants' direction or with their knowledge and acquiescence.

Accordingly, the Court will dismiss Count XVIII without prejudice pursuant to Rule 12(b)(6).

4.      Claim for Attorneys' Fees Pursuant to 42 U.S.C. § 1988 (Count III)

Additionally, the Court concludes that it must deny Defendants' motion insofar as it seeks to dismiss Count III, which states a claim for the recovery of attorneys' fees pursuant to 42 U.S.C. § 1988.  Section 1988 authorizes an award of attorneys' fees to a prevailing party in an action to enforce various statutory rights, of relevance here, the provisions of 42 U.S.C. §§ 1983 and 1985. 42 U.S.C. § 1988(b).  As discussed, Plaintiffs have pled section 1983 claims for First Amendment retaliation, and those claims are entitled to go forward.  Dismissing the section 1988 claims for attorneys' fees in the event Plaintiffs should prevail on those claims would be premature.

**C.      State Law Claims**

1.      Conscientious Employee Protection Act Claim (Count IV)

The Conscientious Employee Protection Act ("CEPA") is New Jersey's "whistleblower" statute.  N.J.S.A. 34:19-1 et seq.  It protects employees from retaliation by an employer for reporting, threatening to disclose or refusing to participate in the employer's unlawful activity. N.J.S.A. 34:19-3; D'Annunzio v. Prudential Ins. Co. of Am., 192 N.J. 110, 120  (2007) ("CEPA prohibits an employer from taking adverse employment action against any 'employee' who exposes an employer's criminal, fraudulent, or corrupt activities.").  To further its remedial goals of protecting employees and deterring employers from engaging in unlawful or corrupt conduct, CEPA created a private right of action for the aggrieved employee against the employer.  N.J.S.A. 34:19-5; D'Annunzio, 192 N.J. at 120.  The elements of a CEPA claim are: (1) the aggrieved employee reasonably believed that the employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she

21

performed a "whistle-blowing" activity described in N.J.S.A. 34:19-3c; (3) an adverse

employment action was taken against the plaintiff employee; and (4) a causal connection exists

between the whistle-blowing activity and the adverse employment action.  Dzwonar v. McDevitt,

177 N.J. 451, 462 (2007).  A CEPA plaintiff need not demonstrate "that the activity complained

of ... [constituted] an actual violation of a law or regulation," but simply that he or she

"'reasonably believes' that to be the case."  Id. (quoting Estate of Roach v. TRW, Inc., 164 N.J.

598, 613 (2000)).

      Defendants' argument that the Plaintiffs have pled insufficient facts to assert a prima facie

CEPA claim is belied by the Amended Complaint itself.  Clearly, Ferraioli alleges that he

reasonably believed various actions by Chief Zisa and the Hackensack Police Department violated

the law and sent a letter to Chief Zisa objecting to the activity.  In that letter, Ferraioli complained

in detail about the retaliation against him and other officers for supporting Inglima in the PBA

election, about failing to accommodate light duty requests in spite of Ferraioli's medical disability

and about a threat of physical violence made against him (directly or indirectly) by Sergeant

Trezza.  Taking the facts as true, Ferraioli's complaints - which the Amended Complaint alleges

were made both orally and in writing - constitute protected whistle-blowing activity.  In relevant

part, the statute provides:

> An employer shall not take any retaliatory action against an employee because the employee does any of the following . . .
>
> c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:
>
> (1) is in violation of a law, or a rule or regulation promulgated pursuant to law ...;
> (2) is fraudulent or criminal; or
> (3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

N.J.S.A. 34:19-3c.  Moreover, the remaining two elements of a CEPA claim are adequately pled. Ferraioli alleges that as a result of his objections to the allegedly unlawful conduct of the Hackensack Police Department, he was targeted for disciplinary proceedings and assigned to a walking post in spite of his known foot injury.  As to Lamboy, the Amended Complaint also alleges that he submitted a letter to Captain Carroll complaining of retaliation for his union election activities, as detailed above, and refusing to submit to pressure placed on him to engage in a "cover-up" of the department's illegal activity with respect to the election.  Lamboy avers that because of his objections, disciplinary action was pursued against him, resulting in a two-day suspension without pay.

In their argument for the dismissal of the CEPA claims, Defendants focus on Count IV's numbered paragraphs and argue that Plaintiffs set forth no facts at all in support of their CEPA claim.  The Court agrees that the allegations organized under Count IV by themselves say nothing, and indeed observes that, although Plaintiffs "reallege and incorporate" into Count IV the preceding allegations, Plaintiffs might have given better indication in that section of the Amended Complaint what the factual predicate of the CEPA claim is.  Nevertheless, the Court cannot take

such a cabined view and instead must consider the Amended Complaint as a whole and in context. Iqbal, 129 S.Ct. at 1950.  Accordingly, the CEPA claims pled by Ferraioli and Lamboy state a claim upon which relief may be granted, and Defendants' motion to dismiss will be denied in this respect.

2.    <u>Pierce Claim (Count V)</u>

Defendants had initially moved to dismiss this claim as barred by CEPA's waiver provision, which provides that institution of a CEPA action constitutes a waiver of all other rights and remedies, including those under the common law.  <u>N.J.S.A.</u> 34:19-8.  In their reply brief, however, Defendants represent that they wish to withdraw this portion of their motion, in light of <u>Rubin v. Sultan</u>, No. 08-6175 (SRC), 2009 WL 1372272 (D.N.J. May 15, 2009).  They have expressly reserved their right to raise the waiver argument again at a later point in the litigation.

The Court will accordingly not address the sufficiency of the <u>Pierce</u> claim as pled and will state in its Order that Defendants' motion for the dismissal of Count V of the Amended Complaint pursuant to Rule 12(b)(6) has been withdrawn.

3.    <u>Contract Claims (Counts VII, VIII and IX)</u>

The Amended Complaint pleads for relief for breach of express contract (Count VII), breach of implied contract (Count VIII) and breach of the implied covenant of good faith and fair dealing (Count IX).  These claims fail to meet basic pleading standards under Rule 8(a) and <u>Iqbal</u>.

24

To assert a prima facie breach of contract claim under New Jersey law,[5] a plaintiff must demonstrate "that the parties entered into a valid contract, that the defendant failed to perform his obligations under the contract and that the plaintiff sustained damages as a result." Murphy v. Implicito, 392 N.J.Super. 245, 265 (App. Div. 2007). The Amended Complaint does not identify any contract, either express or implied, that existed between or among the parties to this lawsuit, nor, moreover, in what way Defendants failed to perform the unknown terms of such a theoretical contract. Relatedly, there can be no claim for breach of the implied covenant of good faith and fair dealing without identifying a contract, the performance or non-performance of which may serve as the predicate for the claim. See Wilson v. Amerada Hess Corp., 168 N.J. 236, 244 (2001) (holding that under New Jersey law, every contract contains an implied covenant of good faith and fair dealing in the performance and enforcement of the contract's terms); Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 421 (1997) (holding that implied covenant means that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."). Plaintiffs argue that dismissal of these claims would be premature and believe that discovery will reveal both the existence of contractual obligations and Defendants' violation of such obligations. This hope by Plaintiffs to fill in the obvious deficiencies of the Amended Complaint at some later time does not meet the pleading requirements set forth by the Federal Rules of Civil Procedure. Should Plaintiffs investigate these

---

[5] The Court has supplemental jurisdiction over these contract claims, pursuant to 28 U.S.C. § 1367. It must therefore apply the law of the forum state in reviewing the adequacy of these claims as pled. Chin v. Chrysler, 538 F3d 272, 278 (3d Cir. 2008) (holding that federal court hearing state law claim in exercise of its supplemental jurisdiction must apply law of forum state to determine substantive matter).

25

potential claims and develop factual allegations to support them, they may move for leave to amend their pleading, pursuant to Rule 15(a)(2), to add such claims.

The contract claims set forth in Counts VII, VIII and IX of the Amended Complaint will therefore be dismissed without prejudice.

### 4.   Hostile Work Environment Claim (Count XV)

In Count XV of the Amended Complaint, Plaintiffs seek relief for what they allege was a "hostile work environment" created by Defendants "because of their [Plaintiffs'] political affiliation and because of how they voted in the PBA delegate election." (Am. Compl., ¶ 194.) As Defendants argue in their brief, an action for damages based on a "hostile work environment" is authorized under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq. ("NJLAD"). The NJLAD targets discrimination "because of race, creed, color, national origin, ancestry, age, sex, gender identity or expression, affectional or sexual orientation, marital status, familial status, liability for service in the Armed Forces of the United States, disability or nationality." N.J.S.A 10:5-3. The list of conduct proscribed by the statute does not include discrimination based on political affiliation. Count XV must, therefore, be dismissed for failure to state a claim upon which relief may be granted.[6]

### 5.   New Jersey Civil Rights Act Claim (Count XVI)

In addition to asserting section 1983 claims, the Amended Complaint also pleads for relief for Defendants' alleged infringement of their First Amendment rights under New Jersey's Civil

---

[6] The Court notes that in their opposition brief point on Count XV, Plaintiffs ask the Court for leave to amend the Complaint to add a section 1983 claim for political affiliation discrimination. As set forth in Section II.B.2 of this Opinion, the Court declines to entertain such an informal request for leave to amend.

Rights Act, N.J.S.A. 16:16-1 <u>et seq.</u>  The statute, which is modeled after section 1983, creates a private cause of action for violation of an individual's federal and state constitutional rights. N.J.S.A. 16:6-2(c); <u>Nieves v. Ortiz</u>, No. 06-5206 (DRD), 2008 WL 4004940, at *12 (D.N.J. Aug. 20, 2008); <u>Owens v. Feigin</u>, 194 N.J. 607, 611 (2008).  The Court has, for the reasons discussed above, found that the Amended Complaint adequately alleges that Plaintiffs' First Amendment rights of free speech and free association have been infringed and permitted the section 1983 claims brought to remedy those alleged violations to proceed.  The Court likewise permits the state counterpart to section 1983 to proceed.  The portion of Defendants' motion which seeks to dismiss the New Jersey Civil Rights Act Claim will be denied.

III.  CONCLUSION

For the foregoing reasons, this Court will grant Defendants' motion to dismiss in part, dismissing the claims set forth in Counts VII, VIII, IX, XV and  XVIII of the Amended Complaint pursuant to Rule 12(b)(6), and deny the motion as to Counts I, III, IV and XVI.  The claim pled in Count II, for relief under 42 U.S.C. § 1985, will be dismissed, at the request of Plaintiffs, pursuant

to Rule 41(a)(2).  Defendants' motion has been withdrawn with respect to the <u>Pierce</u> claim pled

in Count V.  The remaining claims asserted in the Amended Complaint were not challenged on

this motion.  An appropriate form of order will be filed together with this Opinion.


       <u>  s/Stanley R. Chesler  </u>
       STANLEY R. CHESLER
       United States District Judge


DATED: February 2, 2010