UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTHONY FERRAIOLI, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>CITY OF HACKENSACK, *et al.*,<br><br>    Defendants. | Civil Action Number:<br>2:09-03076<br>(CONSOLIDATED)<br><br>[Civil Action Number:<br>2:09-02663]<br><br>OPINION<br><br>HON. WILLIAM J. MARTINI |

## MEMORANDUM OPINION

### I.    INTRODUCTION

On June 2, 2009, Plaintiffs, Patrolman Anthony Ferraioli of the Hackensack Police Department ("HPD"), Patrolman Aldrin Lamboy of the HPD, and Dawn Fray,[1] filed a multi-count federal civil rights action against Defendant HPD Chief of Police, C. Kenneth Zisa, and others, alleging that the Defendants violated their constitutional rights. On March 25, 2010, Plaintiffs filed a nineteen count Second Amended Complaint ("Complaint"), which, for the first time, asserted federal and state causes of action against Defendant Captain Danilo Garcia. Garcia has filed a motion to dismiss, and for sanctions pursuant to Rule 11. For the reasons elaborated below, the Court will **DENY** the motion.

### II.    FACTUAL BACKGROUND ALLEGED IN THE COMPLAINT

The gravamen of the Complaint is that the Hackensack Chief of Police, Defendant Zisa, engaged in a pattern of extortion, against other HPD officers, i.e., Plaintiffs, seeking, among other things, political donations to further Zisa's political career and the political career of those allied with them, including candidates for office within the Policemen's Benevolent Association ("PBA") of Hackensack. It is further alleged that those who were not allied with Zisa, including those officers who refused to donate to Zisa and his allies'

---

[1] Fray was living with Ferraioli at the time of the events that gave rise to the allegations in the Complaint. Fray is now Ferraioli's wife.

political campaigns, were subject to retaliation and threats of retaliation in violation of Plaintiffs' First Amendment free speech and freedom of association rights.

With respect to Defendant Garcia, Plaintiffs allege that on June 10, 2009, about a week after Plaintiffs filed suit, Captain Garcia contacted Patrolman Ferraioli and ordered him to attend an interview on June 11, 2009. Ferraioli was unable to arrange to have a lawyer present, although he was accompanied by a PBA representative. Prior to these events, it appears that the Bergen County Prosecutors' office had conducted an investigation into who had been blogging under the screen name "I A Salcedo" on NJ.com. The blogger allegedly assumed the identity of Captain Thomas Salcedo. At the June 11, 2009 interview, Garcia showed Ferraioli three grand jury subpoenas that asked for AOL account information, Verizon account information and credit card information. Garcia advised Ferraioli that a person from Ferraioli's home address was using the screen name "I.A. Salcedo" on the NJ.com blog and asked if it was Ferraioli. Ferraioli denied doing it. Garcia then informed Ferraioli that he must turn over his computer as part of the investigation and pursuant to Attorney General Guidelines. Ferraioli refused to consent and argued that a warrant was required. Garcia responded that he must turn over the personal computer, and if he fails to do so he could face administrative charges, including termination. Ferraioli was then escorted by Captain Garcia and Sgt. Rich Levis to the back of a police vehicle and driven to his home in Milford, New Jersey. Ferraioli characterizes this event as being in custody and further alleges that he was not free to leave as he sat in the back of the squad car. The officers then entered his home without a warrant and took the personal computer from his home as part of the purported administrative investigation. Plaintiff characterizes the taking of his computer as a Fourth Amendment seizure. Likewise, Plaintiff characterizes his time in the police vehicle as being in "custody," and further characterizes this event as a Fourth Amendment violation. Plaintiffs assert the following counts against Garcia: Count XIII – N.J. Law Against Discrimination – retaliation for filing suit against the HPD and others; Count XV – invasion of privacy for illegally entering Fray and Ferraioli's home and accessing their computer files; Count XVI – conversion apparently tied to the seizure of the computer; Count XVII – trespass to chattels apparently tied to the seizure of the computer and accessing its files; Count XVIII – 42 U.S.C. § 1983 for violating Ferraioli's (and Fray's) Fourth Amendment rights tied to Garcia's entering Ferraioli and Fray's home, Ferraioli's time in the squad car, and the seizure of the computer; and Count XIX – N.J. Civil Rights Act for wrongful seizure.

### III.   STANDARD OF REVIEW

The Defendant's motion to dismiss is brought pursuant to the provisions of Fed. R. Civ. P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States*, 404 F.3d

744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. *Id*. Furthermore, in order satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002).

### IV. ANALYSIS

Garcia's position is that Plaintiffs' claims must be dismissed because Ferraioli consented to Garcia's taking the computer, consented to riding in the police car to his home (and was never in any meaningful sense in "custody"), and consented to Garcia entering his home. Garcia's brief points to the following exchange between Garcia and Ferraioli:

> Q [Garcia]: But as [to] discipline, it can be up to dismissal if you refuse to cooperate, if you refuse to answer questions, if you refuse to turn over your computer.
> A [Ferraioli]: Well, [I'm] not going to refuse to turn the computer over because I got nothing to hide. The point is, can I do it with the attorney, that's what I want do.
> Q: We're going to do it right now.
> A: Do what?
> Q: Take – we're requesting you – we're ordering you to turn the computer over now at the conclusion of this interview.
> A: Well, I don't – it's home.
> Q: We'll go get it with you.
> A: Okay. Even though the – the interview is not complete, you're going to take the computer right now.

> Q: Yeah, because that's part of this investigation. It's an investigation and it's not an interview.
> A: All right. Let's finish it then, let's finish it up. Let's finish it. I'm giving you the computer. I have nothing to hide so I'm giving you the computer because I don't want –
> Q: So let's go over it again. You're willing to continue with this –
> A: Yes, let's go, continue with this.[2]

In a later exchange with Garcia, Ferraioli stated:

> A: And what would happen right now if I did not give you the computer today?
> Q: You're not cooperating with the investigation, which, you know, part of not cooperating is an additional [administrative] charge.
> A: Okay
> Q: Up to discipline, up to dismissal, if you do not cooperate with this investigation.[3]

Likewise, at a hearing before Judge Chesler, Ferraioli stated:

> Q: So, when you were saying you had nothing to hide, you weren't saying, hey, you could take my computer.
> A: No.
> . . . .
> Q: But you ultimately went to your house with Captain Garcia and got the computer for him?
> A: After being told numerous times about the [state] Attorney General guidelines [mandating cooperation in administrative investigations] and I could be charged administratively and I could be terminated, yes.
> Q: So, you acquiesced after you were told you had to?
> A: I was ordered to. He gave me an order.
> . . . .
> Q: Did you ask for an attorney during the internal affairs investigation?
> A: Numerous times.
> Q: Was one denied you?
> A: Yes.
> Q: Specifically, who denied you your right to an attorney?
> A: Captain Garcia.

---

[2] Transcript of Ferraioli Interview, City of Hackensack Internal Investigation 20:1-25 to 21:1-4 (June 11, 2009) (Doc. No. 56-2; Ex. B).

[3] *Id*. at 42:4-11.

4

> . . . .
> The Court: I just want to ask one simple question. Sir, you were told essentially you let them have the computer or you were going to face administrative charges. Is that correct?
> A: That is correct, sir.[4]

A police officer may search a place or seize property even absent probable cause, if the officer has consent from the property's owner. The standard for consent is "voluntariness." *Schneckcloth v. Bustamonte*, 412 U.S. 218, 227 (1973) ("Similar considerations lead us to agree with the courts of California that the question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances."). Relying on just the information put forward by Defendant Garcia, this Court cannot conclude, at this preliminary stage, that Ferraioli's ultimate decision to allow his brother officers into his house and to take his computer was a voluntary choice of his unconstrained will. He was quite literally ordered to comply, and he only complied after he was threatened with administrative action, including dismissal.

Because Defendant puts forward no law explaining the standard for consent in regard to the state law causes of action or law suggesting that that standard differs from the federal standard for consent in the Fourth Amendment context, the Court will not dismiss any of the state law causes of action. Furthermore, because the Court will deny dismissing the claims based on purported "consent," this Court will also deny granting any relief under Rule 11.

## V. CONCLUSION

For the reasons elaborated above, the Court **DENIES** the Motion to Dismiss and for Sanctions under Rule 11. (Doc. No. 56.). An appropriate order follows.

                                                             s/ William J. Martini
**DATE: March 14, 2010**                                      **William J. Martini, U.S.D.J.**

---

[4] Transcript of Motion Hearing to 27:8-10 to 30:1-2 (June 15, 2009) (Chesler, J.) (Doc. No. 56-2; Ex. A); *id*. at 35:16-25.